[No. 36666.    Department One.    December 12, 1963.]

DAVID P. HILLIARD *et al., Respondents*, v. THE CITY OF SEATTLE, *Appellant,* CENTURY 21 EXPOSITION, INC., *Defendants.**

*A. C. Van Soelen, John P. Harris,* and *John A. Hackett,* for appellant.

*Paul M. Stocker* and *Lyle L. Iversen,* for respondents Hilliard, Frost and Stidham.

*Corbett, Siderius & Lonergan,* for respondents John C. Corbett and Corbett & Co., Inc.

ROSELLINI, J.—The question before the court in this case is: does RCW chapter 35.86 apply to the leasing of the Seattle Civic Center parking garage and the leasing of the Interbay parking area? The trial court held in the affirmative, and consequently voided leases which had been negotiated by the city in disregard of the provisions of that law.

According to the findings of fact, the site for the Civic Center parking garage was acquired by the city through purchase and condemnation, and an ordinance authorized the issuance of bonds to finance the construction of the multiple-level garage which was constructed by the city.

*Reported in 387 P. (2d) 536.

The Interbay parking area was acquired by purchase, condemnation, adverse possession, and street vacation. The garage and the Interbay parking area were leased to Century 21 Exposition, Inc., which entered into various subleases. Apparently, the Interbay area was never used as a parking facility.

RCW 35.86.010 provides:

"Cities of the first, second, and third classes are authorized to provide off-street parking space and facilities for motor vehicles, and the use of real property for such purpose is declared to be a public use."

RCW 35.86.020 authorizes such cities, in addition to their powers for financing public improvements, to finance such facilities through issuance and sale of bonds and to create and use local improvement districts for this purpose. It also authorizes the use of general funds or issuance of bonds to finance surveys, construction, maintenance, and management of such facilities.

There is in RCW 35.86.020 an authorization to acquire real property for off-street parking purposes and to dispose of such property.

The appellants maintain that before the enactment of chapter 35.86, the city had the authority under general law to acquire and use property for off-street parking facilities in connection with its civic auditorium and other civic buildings. The city contends that it did not act under this statutory authorization and therefore was not obliged to follow the procedure which the statute prescribes for the leasing of off-street parking facilities. That procedure is set forth in RCW 35.86.040, which provides in pertinent part:

"Such cities are authorized to establish the method of operation of off-street parking space and/or facilities by ordinance, which may include leasing or municipal operation: *Provided, however,* That no city with a population of more than one hundred thousand shall operate any such off-street parking space and/or facilities until after it has called for sealed bids from responsible, experienced, private operators of such facilities for the operation thereof.

. . . The competitive bid requirements of this section shall not apply in any case where such a city shall grant a long-term negotiated lease of any such facility to a private operator on the condition that the tenant-operator shall construct a substantial portion of the facility or the improvements thereto, which construction and/or improvements shall become the property of the city on expiration of the lease. If no bid is received for the operation of such an off-street parking facility, or if none of the bids received meet the minimum rental specified, the legislative body of the city may reject all bids, in the latter case, and in both situations may readvertise the facility for lease or may operate the facility itself. If the city elects to operate the parking facility itself, it shall at least once in every three years again readvertise for bids in the same manner as provided above."

We need not consider the appellant's contention that prior to the enactment of this statute, the city had authority to acquire a site for and construct the Civic Center parking garage, and to lease it and the Interbay parking area.

█ The statute is not, by its terms, limited in application to the leasing of those off-street parking facilities which the city could not have constructed or operated without its authorization. Neither are leases of parking facilities which are adjacent to or used primarily in connection with municipally-owned buildings or other facilities excepted. The statute applies to off-street parking facilities generally, and RCW 35.86.910 declares that insofar as the provisions of chapter 35.86 are inconsistent with other provisions of the law, they shall be controlling.

We think that RCW 35.86.040 is clear and unambiguous. It declares that before a city having a population of more than one hundred thousand shall operate an off-street parking facility, it shall take competitive bids. Only one exception was made, and it has no application here. The statutory requirement was admittedly ignored by the city when it leased the facilities involved in this action.

The appellant does not challenge the appropriateness of the relief granted by the trial court, but rests its appeal upon its contention that the court incorrectly concluded that

the city was required to follow the procedure set forth in the statute. We find no merit in that contention.

The judgment is affirmed.

OTT, C. J., HILL, HUNTER, and HALE, JJ., concur.